**In re JOSEPH S. et al.**

**No. 2000–357–Appeal.**

Supreme Court of Rhode Island.

Jan. 29, 2002.

476 ■ ■

Frank P. Iacono, Jr., Thomas J. Corrigan, Jr., Washington Crossing, PA, for Plaintiff.

Janice M. Weisfeld, Paula Rosin, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

### PER CURIAM.

This case came before the Supreme Court on December 3, 2001, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be decided summarily. The respondent-mother, Melissa S. (mother or respondent), appealed from a Family Court decree terminating her parental rights to her son Joseph S., pursuant to G.L.1956 § 15–7–7(a)(2)(i) [1] and daughter Mary S., pursuant to § 15–7–7(a)(2)(i) and (a)(3).[2] After hearing counsels' arguments and considering the memoranda submitted by the parties, we are satisfied that cause has not been shown. Therefore, this appeal will be decided summarily.

■ When reviewing a decree involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice. *In re Jennifer R.*, 667 A.2d 535, 536 (R.I. 1995); *In re Kristen B.*, 558 A.2d 200, 205 (R.I.1989). We have long held that the

"[t]he child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed, and provided that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time, considering the child's age and the need for a permanent home * * *."

1. General Laws 1956 § 15–7–7(a)(2) provides that the court shall terminate the parental rights to a child if "[t]he parent is unfit by reason of conduct or conditions seriously detrimental to the child, such as * * * (i) Institutionalization of the parent, including imprisonment, of such a duration that renders it improbable for the parent to care for the child for an extended period of time."

2. Section 15–7–7(a)(3) provides that the court shall terminate the parental rights to a child if,

findings of a trial justice are entitled to great weight, and will not be disturbed on appeal unless clearly wrong or, if in making those findings, the trial justice overlooked or misconceived material evidence. *See In re Christina V.*, 749 A.2d 1105, 1111 (R.I.2000) (per curiam).

■ Joseph has been in the care of the Department of Children, Youth, and Families (DCYF or department), since his birth[3] because of his mother's chronic mental illness and admission to St. Joseph Hospital (St. Joseph) for psychiatric care. Mary has been in the department's care since her birth,[4] upon her mother's admission of dependency. DCYF repeatedly attempted to unite the children with their mother and developed numerous case plans with the goal of unification. Toward this end, mother was to remain substance abuse-free and was referred to the Community Counseling Center (CCC) and the Providence Center for psychiatric treatment and counseling. At one point, the CCC was providing daily visits to mother to ensure that she was complying with her prescribed medications. In addition, various medications were prescribed by Butler Hospital (Butler) and St. Joseph to help stabilize respondent's mental state. However, in what became an unfortunate and chronic pattern, respondent discontinued the use of these medications without her doctor's approval. Her social worker indicated that mother's excuses for failing to take these prescription drugs were that one medication resulted in skin sensitivity that would ruin her summer because she could not go to the beach, and another

medication resulted in weight gain. As a result of this noncompliance, mother continued to experience severe mental dysfunction that required hospitalization or resulted in her incarceration at the Adult Correctional Institutions. The trial justice recognized the cyclical nature of mother's behavior when he stated: "a crime is committed, she is placed in treatment on emergency certification, she takes her medicine, she is released, she stops taking her medicine, she commits a crime, she is placed in treatment * * *." Since DCYF became involved in this case, mother was incarcerated five times and hospitalized seven times from 1996 until 1999. As a result of this behavior, mother was incapable of complying with the visitation schedule developed by the department. The respondent often would miss or cancel visits with the children, fail to appear or would be incarcerated and, therefore, unavailable for numerous scheduled visits. Consequently, of the thirty-three visits that were scheduled between March 1998 and February 1999, mother missed fifteen visits.

The trial justice found that the department had established, by clear and convincing evidence, that mother suffers from serious mental illness,[5] and that the department made reasonable efforts to assist her in the hopes of unifying this family. But because of the mother's repeated incarcerations and hospitalizations, and, more significantly, her refusal to comply with treatment, DCYF had little success.

■ Regardless of the unlikelihood for success, the department is required,

---

3. Joseph was born on April 11, 1996.

4. Mary was born on April 25, 1997.

5. The trial justice determined that "[t]he evidence [was] clear that * * * mother suffers from serious mental health issues. The fact that she also suffers from an ancillary substance abuse problem does nothing but compound the problem. These psychiatric conditions have been prevalent from the onset of DCYF's involvement and have persisted up to the time of trial. [Mother] has done nothing to help herself and, although fully aware of the importance of taking her prescriptions, has refused to comply."

pursuant to § 15–7–7(a)(3), to make reasonable efforts to strengthen the parental relationship until a termination petition is filed pursuant to § 15–7–7(b)(2). *In re Kristen B.*, 558 at 203; *In re Kathaleen*, 460 A.2d 12, 14 (R.I.1983). The issue of the reasonableness of the department's efforts must be determined from the "particular facts and circumstances of each case." *In re Kristen B.*, 558 A.2d at 203; *In re Ann Marie*, 461 A.2d 394, 395 (R.I.1983). Here, mother received psychiatric and counseling services from numerous institutions and organizations, including St. Joseph, Butler, South Shore Mental Health Center, the Wings drug program, CCC, Crossroads and the Providence Center. Despite this plethora of services, mother failed to achieve appropriate insight into her illness and refused to recognize her need for medication, preferring instead to remain in a devastating cycle of violent behavior followed by institutionalization or hospitalization, as recognized by the trial justice. Although the department is responsible for making reasonable efforts, DCYF does not guarantee success and ought not be burdened "with the additional responsibility of holding the hand of a recalcitrant parent." *In re Kristen B.*, 558 A.2d at 204. Therefore, we are satisfied that the department made reasonable efforts toward unification of respondent with her children and is not responsible for mother's chronic inability to comply with DCYF's case plans.

■ We are also satisfied that the best interests of both Joseph and Mary require a termination of mother's parental rights for these children to remain with their foster family in a pre-adoptive home. This Court has held that this process

> "involves the determination of the right of a minor child to reasonable care and maintenance, freedom from abuse or neglect, and the right to be given an op-

portunity to spend the remainder of his or her childhood in a family setting in which the child may grow and thrive. * * * [W]e have long espoused the position that the rights of parents are a most essential consideration, but we further recognize that the best interests and welfare of the child outweigh all other considerations." *In re Stephanie*, 456 A.2d 268, 271 (R.I.1983) (quoting *In re David*, 427 A.2d 795, 801 (R.I.1981)).

Both Joseph and Mary have been in the state's care and custody since birth and have never resided with the respondent. It is clearly in their best interest that, after remaining in foster care for four and five years respectively, these children continue to live in the stable and safe environment offered by their adoptive parents.

Accordingly, the respondent's appeal is denied and dismissed. The decree of the Family Court is affirmed and the papers in this case are remanded to the Family Court.