### In re LEARA G.

### No. 2001–208–Appeal.

Supreme Court of Rhode Island.

May 22, 2002.

Frank P. Iacono, Jr.; Thomas J. Corrogan, Jr., Providence.

Paula Lynch Hardiman, Providence.

### O R D E R

This case came before the Court for oral argument on May 6, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. The respondent-mother, Lawanda G. (mother or respondent), appeals from a Family Court decree terminating her parental rights to her daughter, Leara G. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

Leara has been in the care of the Department of Children, Youth, and Families (DCYF) since her birth, on February 24, 1999. The next day, her mother, who was mentally ill, was admitted to the Jane Brown building at Rhode Island Hospital for psychiatric care. DCYF, through caseworker Beth Mullen (Mullen), established an initial case plan in an attempt to reunify Leara with her mother, which was signed by respondent on March 30, 1999. The case plan included individual goals to maintain stable mental health, attend parenting and drug rehabilitation classes, and to establish regular visits with Leara at a DCYF office. Although respondent complied with a few of the goals,[1] respondent had an extremely difficult time fulfilling her duty to visit with Leara. Although twenty-two supervised visits with Leara were scheduled for respondent between June 22, 1999 and December 1999, respondent missed seventeen for various reasons. This occurred even though Mullen supplied respondent with free bus passes to enable her to attend the visits.

On April 27, 1999, respondent was given the option of participating in the Winslow House Program in Newport. This program would have enabled respondent to live with Leara. However, because respondent's boyfriend could not live with her and Leara, respondent rejected the offer and, instead, lived with her boyfriend.

By September 10, 1999, a second case plan was established, incorporating the same goals as the first plan, except that respondent was now to complete advanced parenting classes through the Providence Family Learning Center (PFLC). However, respondent was dismissed from PFLC two times for failure to attend the classes. Eventually, respondent did attend the classes, but not until June 2000. Furthermore, respondent's attendance at the visi-

---

1. The respondent did maintain good mental health through home counseling services provided by East Bay Mental Health Center, the center she was referred to after her discharge from the hospital. The respondent also completed parenting classes at St. Mary's Home for Children.

tations did improve through the latter part of 2000.

DCYF filed a petition to terminate respondent's parental rights to Leara on March 10, 2000. Hearings were conducted in the Family Court during October and November 2000. After considering the testimony and the briefs submitted by the parties, the trial justice issued a written decision and an order terminating respondent's parental rights in February 2001. Throughout this entire time, Leara remained in foster care. The respondent timely appealed.

The respondent argues that the trial justice erred in determining that (1) DCYF made reasonable efforts to reunify respondent and Leara, (2) respondent was an unfit mother, and (3) the termination was in Leara's best interests. The respondent further argues that the trial justice overlooked evidence that respondent made improvements after the petition to terminate her parental rights had been filed. We disagree.

"When reviewing a decree involving the termination of parental rights, this Court examines the record to determine whether legally competent evidence exists to support the findings of the trial justice." *In re Joseph S.*, 788 A.2d 475, 476 (R.I.2002) (citing *In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995) and *In re Kristen B.*, 558 A.2d 200, 205 (R.I.1989)). It is well settled that "the findings of a trial justice are entitled to great weight, and will not be disturbed on appeal unless clearly wrong or, if in making those findings, the trial justice overlooked or misconceived material evidence." *Id.* at 476–77 (citing *In re*

*Christina V.*, 749 A.2d 1105, 1111 (R.I. 2000)).

In the instant case, the respondent has failed to demonstrate that the trial justice overlooked or misconceived material evidence, or was otherwise clearly wrong. The trial justice properly stated that "DCYF has proven by clear and convincing evidence that [the respondent] failed to successfully complete any objective of her case plans between the period of February 1999 * * * [to] the date of the filing of the instant Petition. Despite numerous referrals, and in some cases multiple re-referrals, [the respondent] failed to resolve her issue due to her own non-compliance with services." Furthermore, the trial justice found that "[Leara] has been integrated into the foster family and is doing well there. The foster home is willing and able to permanently integrate the child into the foster family." It is clear that the Family Court justice properly determined that it was in Leara's best interest to remain in the pre-adoptive home. Thus, the trial justice did not overlook or misconceive material evidence, nor was he clearly wrong.

Accordingly, the respondent's appeal is denied and dismissed. The judgment of the Family Court is affirmed. The papers of the case are returned to the Family Court.