**In re DESTINEY L. et al.**

**No. 2008–338–APPEAL.**

Supreme Court of Rhode Island.

June 14, 2011.

George J. West, Esq., Providence, for Respondent.

Martha J. Kelly, Esq., Department of Children, Youth & Families, for DCYF.

Shella R. Katz, Esquire, Court Appointed Special Advocate, for CASA.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The respondent-mother, Shakiyyah L., appeals from a Family Court decree terminating her parental rights to two children, ShaHeim L.[1] (d.o.b. 10/22/98) and Destiney L.[2] (d.o.b. 05/08/03). This case came before the Supreme Court on April 6, 2011, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time. For the reasons set forth in this opinion, we affirm the decree of the Family Court.

## Facts and Travel

On April 12, 2005, Shakiyyah delivered a stillborn boy at Women and Infants Hospital. While she was hospitalized, testing revealed cocaine and opiates in Shakiyyah's system.[3] Because it suspected that Shakiyyah had used drugs during her pregnancy, the Department of Children, Youth, and Families (DCYF or the department) initiated an investigation. As a result of that investigation, on April 14, 2005, DCYF removed respondent's children, ShaHeim and Destiney, as well as Destiney's half-brother Ty, from the custody of Shakiyyah and her partner Tyrence and placed the children in foster care with relatives.

DCYF caseworkers then established a goal of reunifying mother and children. It was clear from the outset, however, that substantial changes would have to be made in Shakiyyah's life before the goal of reunification could be met. In addition to her positive drug screens, Shakiyyah had a troubled past that caught the attention of caseworkers when they reviewed her history. Specifically, Shakiyyah had two older children who had been adopted by their maternal grandmother, she had been sexually and physically abused as a child, and

1. The Family Court also terminated the parental rights of ShaHeim's father, Andre Taylor. That termination is not part of this appeal.

2. Destiney's father, Tyrence W., also appealed the termination of his parental rights as to Destiney and another of his children, Ty W. That appeal, however, was withdrawn before oral argument in this case. We note that the cases of Shakiyyah and Tyrence were tried together in the Family Court, and the trial justice issued one opinion with respect to both parents. That has created some confusion in the record about testimony and findings.

3. The trial justice seemingly discredited the presence of opiates in Shakiyyah's blood because the hospital notes indicate Shakiyyah was given morphine, an opiate, during her hospitalization.

she experienced childhood lead poisoning that contributed to a low I.Q. and cognitive disabilities. Thus, DCYF determined that a wide variety of issues needed to be addressed, including mother's (1) substance abuse, (2) reported depression and mental health issues, (3) a cognitive assessment, (4) a parenting assessment, (5) a parent/child evaluation, and (6) visitation. Despite that lengthy list of challenges, there was no doubt that mother's drug abuse was the biggest barrier to reunifying this family.

After the initial evaluation, DCYF social worker, Catherine Brown, spoke with Shakiyyah on May 5, 2005, and provided her with the telephone number for CODAC, a drug assessment and treatment program. Ms. Brown later testified that at that time Shakiyyah was amenable to substance-abuse treatment.[4]

On June 6, 2005, DCYF workers again spoke with Shakiyyah. They reiterated the importance of substance-abuse treatment as an essential step toward reunifying with her children. During that conversation, Shakiyyah admitted that she had smoked a blunt[5] in the prior two weeks, but she denied that she had used drugs during her pregnancy. A week later, on June 14, Shakiyyah called DCYF and reported that CODAC claimed that it had not received a referral for her from DCYF. Indeed, CODAC contacted DCYF while Shakiyyah was present to confirm that it did not have the necessary paperwork. Ms. Brown asserted that she had made the referral in May, but she also

supplied the necessary information again, and CODAC indicated that it would arrange an intake for Shakiyyah. Ominously, however, Shakiyyah left the intake early and failed to provide a drug screen.

On July 25, 2005, Ms. Brown and Shakiyyah met again to discuss case planning. It is noteworthy that by this point, and indeed, until August 12, 2005, no written case plan existed. Such a plan would be necessary to lay out the steps to reunify Shakiyyah with her children. At the July 25th meeting, Ms. Brown and Shakiyyah talked about referrals for a variety of services. Specifically, Shakiyyah agreed to and signed releases for the following: (1) Pawtucket Alcohol Counseling Center (PACS) for a substance-abuse evaluation; (2) a referral to John Parsons, PhD, for a parent/child evaluation; (3) Community Counseling Center for mental health evaluation; (4) the Spurwink program for a specialized parent aide; and (5) adult education classes. It was determined that the PACS program would be preferable to CODAC for substance-abuse counseling because she had missed some appointments at CODAC. Moreover, PACS was closer to her home and she had better access to public transportation to that program.[6]

When the case plans eventually were completed on August 12, 2005, they required that Shakiyyah maintain sobriety, complete a substance-abuse evaluation and cooperate with any recommendations that might result from those evaluations, submit to urine screens, and refrain from

---

4. The trial justice found that Ms. Brown referred Shakiyyah to CODAC on May 5, 2005; Ms. Brown's testimony, however, indicates that that referral wasn't made until May 17, 2005.

5. "Blunt" is a slang term for "a hollowed out cigar filled with marijuana." *State v. Quinlan*, 921 A.2d 96, 103 n. 4 (R.I.2007).

6. The trial justice later made a finding that Shakiyyah had been referred to the Community Counseling Center; however, the record and testimony show only that a referral was discussed; there is no evidence that it ever was made.

using any illegal substances.[7] They further included requirements that Shakiyyah, "as discussed and agreed," would complete a parenting evaluation and cooperate with any recommendations that might arise from that evaluation, engage in services with a parent aid, complete a mental-health evaluation to assess her "depressive symptoms that [she states she is] feeling," take any prescribed medication to stabilize mental health, enroll in adult education classes, obtain a library card, complete a psychological evaluation to assess cognitive abilities, attend biweekly visits, and other tasks aimed at facilitating reunification with her children.[8] A second set of case plans, prepared on January 9, 2006, established a substantially similar set of goals. However, Shakiyyah did not complete even one of the objectives in the case plans relating to either Destiney or ShaHeim to the satisfaction of DCYF before the termination petitions were filed in 2006.

On May 25, 2006, DCYF filed a petition to terminate Shakiyyah's parental rights to ShaHeim; a TPR petition as to Destiney followed on June 21, 2006. In September 2006, more than *sixteen months* after her

children were removed from her care, and four months after the initial petition to terminate her parental rights were filed, Shakiyyah again sought treatment from CODAC. To her credit, she successfully completed the program and was discharged on December 12, 2006. CODAC reported that Shakiyyah had been substance free during her time there.[9]

Beginning on July 3, 2007, a trial was held in the Family Court that included testimony from Shakiyyah and Tyrence, as well as DCYF employees Kim Sande, Catherine Brown, and Matthew Gunnip. The trial justice found that despite referrals and encouragement by DCYF, Shakiyyah did not complete a substance-abuse evaluation, nor did she receive treatment for her substance abuse problems for more than a year after DCYF removed her children.[10] A decree was entered on May 13, 2008, terminating mother's rights to the two children. In her decision, the trial justice terminated mother's parental rights under G.L.1956 § 15–7–7(a)(2)(iii). Section 15–7–7 provides in pertinent part:

"(a) The court shall * * * terminate any and all legal rights of the parent to the

---

7. We recognize as important that because DCYF was aware of Shakiyyah's illiteracy, the case plan was thoroughly read and/or explained to her. Providing only written materials to an individual who cannot read would bring into question whether reasonable efforts had been made. *See In re Christopher B.*, 823 A.2d 301, 308 (R.I.2003); *In re William, Susan, & Joseph*, 448 A.2d 1250, 1255 (R.I.1982) ("Efforts to encourage and strengthen the parental relationship which are reasonable with respect to an average parent are not necessarily reasonable with respect to an intellectually limited person * * *.").

8. There actually were two case plans, one for Destiney and one for ShaHeim. Because the case plan for Destiney is far more thorough than that for ShaHeim, the facts have been gleaned from her case plan.

9. When Shakiyyah was discharged from CODAC, it was recommended that she engage in aftercare that included a twelve-step program or outpatient treatment. The trial justice determined that Shakiyyah neither sought out nor received services from an after-care program to help her manage her substance-abuse problems. There is no evidence in the record, however, of any assistance offered to Shakiyyah to help her avail herself of an after-care program.

10. In addition to the hearing that resulted in the termination of respondent-mother's parental rights, a November 15, 2007, oral decree from the Family Court (entered *nunc pro tunc* to April 25, 2006) found Shakiyyah had neglected her children by failing to provide a minimum degree of care, supervision, or guardianship.

child * * * if the court finds as a fact by clear and convincing evidence that:

"* * *

"(2) The parent is unfit by reason of conduct or conditions seriously detrimental to the child; such as, but not limited to the following:

"* * *

"(iii) The child has been placed in the legal custody or care of the department for children, youth, and families and the parent has a chronic substance abuse problem and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide care for a child for a period of twelve (12) months due to substance abuse shall constitute prima facie evidence of a chronic substance abuse problem;

"* * *

"(b)(1) In the event that a petition is filed pursuant to subdivision[ ] * * * (a)(2)(iii), * * * the court shall find as a fact that, prior to the granting of the petition, such parental conduct or conditions must have occurred or existed notwithstanding the reasonable efforts which shall be made by the agency prior to the filing of the petition to encourage and strengthen the parental relationship so that the child can safely return to the family."

In addition, the trial justice found by clear and convincing evidence that the requirements of § 15–7–7(a)(3) were also met. Section 15–7–7(a)(3) provides:

"The child has been placed in the legal custody or care of the department for children, youth, and families for at least twelve (12) months, and the parents were offered or received services to correct the situation which led to the child

being placed; provided, that there is not a substantial probability that the child will be able to return safely to the parents' care within a reasonable period of time considering the child's age and the need for a permanent home[.]"

The respondent-mother timely appealed the termination of her parental rights to this Court.

## Standard of Review

"Natural parents have a fundamental liberty interest in the 'care, custody, and management' of their children." *In re Victoria L.*, 950 A.2d 1168, 1174 (R.I.2008) (quoting *In re Destiny D.*, 922 A.2d 168, 172 (R.I.2007)); *accord In re Natalya C.*, 946 A.2d 198, 202 (R.I.2008); *see Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A trial justice must make a finding of unfitness before she may terminate a parent's rights. *In re Charles L.*, 6 A.3d 1089, 1092–93 (R.I.2010). When the court determines that a parent is "unfit" under § 15–7–7(a)(2)(iii), the trial justice also must find that DCYF made reasonable efforts to provide services to the parent to encourage and strengthen the parental relationship pursuant to § 15–7–7(b)(1). After a trial justice makes those findings, "the best interests of the child outweigh all other considerations." *In re Destiny D.*, 922 A.2d at 173 (quoting *In re Kristen B.*, 558 A.2d 200, 203 (R.I.1989)).

When it reviews the termination of parental rights, this Court examines the record "to establish whether the [trial] justice's findings are supported by legal and competent evidence." *In re Victoria L.*, 950 A.2d at 1174 (quoting *In re Ariel N.*, 892 A.2d 80, 83 (R.I.2006)). "The findings of the Family Court justice are accorded 'great weight' on appeal and will not be disturbed unless it can be shown that they

'are clearly wrong or the trial justice overlooked or misconceived material evidence.'" *In re Jose Luis R.H.*, 968 A.2d 875, 881 (R.I.2009) (quoting *In re Victoria L.*, 950 A.2d at 1174). Furthermore, a "natural parent's right to due process requires that the state support its allegations by at least clear and convincing evidence." *Id.* (quoting *In re Victoria L.*, 950 A.2d at 1174 and citing *In re Destiny D.*, 922 A.2d at 172).

### Analysis

On appeal, respondent-mother advances two arguments: First, she maintains that she *did* successfully complete a substance-abuse treatment program and that she engaged in successful visits with her children. Consequently, she argues, the trial justice erred "in finding that DCYF proved *by clear and convincing* evidence that [she] failed to cooperate with services, that [she] was an unfit parent, and that it was in Sha[H]eim and Destiney's best interests that [her] parental rights be terminated." Second, she questions the trial justice's determination that DCYF made reasonable efforts to "encourage and strengthen the parental relationship." *See* § 15–7–7(b). Specifically, Shakiyyah argues that DCYF did not provide referrals for several of her problems that were identified as barriers to reunification in her case plans.

### A

### The Successful Completion of a Substance–Abuse Treatment Program Did Not Rebut the Prima Facie Showing of Chronic Substance Abuse

■ The respondent first argues that because she successfully completed a substance-abuse treatment program and because she remained drug free while undergoing drug screenings during that program, DCYF was unable to prove by clear and convincing evidence that she had a chronic substance-abuse problem. The trial justice noted that, under § 15–7–7(a)(2)(iii), failure to provide care for one's children for a period of more than twelve months due to substance abuse is *"prima facie* evidence of [respondent's] chronic substance abuse problems." Shakiyyah contends, however, that any presumption that her substance-abuse problem could be characterized as "chronic" was rebutted because she successfully completed a substance-abuse treatment program.

First, there can be no dispute with the trial justice's initial finding of a chronic substance-abuse problem because Destiney and ShaHeim were in the custody of the state as a result of Shakiyyah's substance abuse for a period exceeding twelve months before the termination petition was filed. *See* § 15–7–7(a)(2)(iii). The trial justice observed that "Shakiyyah did not satisfactorily complete any substance abuse evaluation between the months of May of 2005 until after the termination of parental rights petition was filed in June of 2006." This finding is well documented in the record and is not contested by respondent. The trial justice then went on to say the following:

"Despite the fact that [Shakiyyah] had not accepted services until after the termination petition was filed, DCYF did refer her to CODAC where she was able to complete a substance abuse evaluation then with clean screens * * *. She was admitted to CODAC Behavioral Health Care System on September 6, 2006 and discharged on December 12, 2006. The recommended after-care plan for her was a Twelve Step Meeting for support and out-patient treatment. There is no evidence to indicate that she attended a Twelve Step Program or out-

patient treatment. From the 'diagnostic synthesis' of that report, it was written that the client didn't 'use' while in treatment."

It is clear that the trial justice was aware that Shakiyyah finally had completed a substance-abuse program. The central question to be addressed by this Court is whether the trial justice clearly was wrong when she ruled that the eventual completion of a substance-abuse treatment program after the termination petition was filed was insufficient to overcome the presumption of chronic substance abuse. In our opinion, the trial justice was not clearly wrong when she so ruled.

The statute articulating the framework by which the state can terminate parental rights properly recognizes parents' fundamental liberty interest in the care, custody, and management of their children while still acknowledging the best interests of children, particularly their need for a permanent, healthy living situation. Thus, a parent's rights cannot be terminated without *first* finding that said parent is unfit despite reasonable efforts by DCYF to strengthen the parent/child relationship. The department's efforts, however, cannot continue *ad infinitum;* indeed, the need for permanency in a child's life is a focal point of the statute.

Here, DCYF made efforts for more than a year, up to and until the time the petition was filed, to urge Shakiyyah to get treatment for her substance-abuse problems. When the department's first referral to CODAC proved to be geographically difficult for her, it provided a second referral, this time to PACS. Moreover, Shakiyyah's caseworkers continually stressed the importance of obtaining treatment as a necessary prerequisite to reunification with her children. For her part, Shakiyyah's compliance with substance-abuse treatment took place in fits and starts. She made an initial effort to go to CODAC, but then failed to complete her intake appointment or provide a urine sample for a drug screen. She attended at least one appointment at PACS in the fall of 2005, but significantly, she provided a positive screen for cocaine while at that program. It was not until December 2006 that she successfully completed any kind of substance-abuse treatment. Moreover, her progress toward sobriety was further complicated by her disappearance, without adequate explanation, from the state for a period of months beginning on December 15, 2005, as well as a short period of incarceration in the spring of 2006.[11]

Finally, even though Shakiyyah eventually completed a substance-abuse program, the trial justice was troubled because she failed to engage in an appropriate aftercare program.[12] Although the record does not reveal any efforts that DCYF may have taken to assist Shakiyyah in that endeavor, § 15–7–7(b)(2) specifies:

"Any duty or obligation on the part of a licensed or governmental child placing agency to make reasonable efforts to strengthen the parental relationship shall cease upon the filing of a petition under this section. This provision shall not be construed and is not intended to limit or affect in any way the parents'

---

11. Shakiyyah said she left Rhode Island to have surgery in New Jersey, but she was unable to provide the court with any documentation. She also fell out of touch with DCYF from the end of March to the beginning of April in 2006, when she was incarcerated at the ACI.

12. The trial justice also observed that, irrespective of Shakiyyah's completion of a treatment program, "[e]fforts to encourage [Shakiyyah] in going to after care treatment or completing the necessary services for reunification were futile."

right to see or visit with the child during the pendency of a petition under this section."

Thus, the statute did not require DCYF to assist Shakiyyah in accessing after-care services following the completion of CO-DAC in December 2006 because the termination petition already had been filed. Therefore, the trial justice was not clearly wrong when she concluded that Shakiyyah's successful completion of a drug-treatment program some twenty months after her children were removed from her care and eight months after the termination petition was filed—coupled with her failure to engage in recommended after care—was insufficient to rebut a presumption of chronic substance abuse.

## B

### Were Reasonable Services Provided?

 The determination of whether DCYF has made reasonable efforts to encourage and strengthen a parent-child relationship is a fact-intensive endeavor and, therefore, unique to each family. *See In re Joseph S.*, 788 A.2d 475, 478 (R.I.2002); *In re Kristen B.*, 558 A.2d at 203. In her argument to this Court, respondent-mother contends that "DCYF did not take meaningful, substantial steps to address and ameliorate [her] identified problem areas, save for substance abuse." We agree that there is little evidence that DCYF was effective in connecting the respondent with services that would address her mental health, parenting, and other issues. The record shows only that DCYF made an effort to refer the respondent to Dr. Par-

sons for a parent/child evaluation.[13] However, because the trial justice terminated Shakiyyah's parental rights on the ground of chronic substance abuse, we have confined our review only to the department's endeavors to resolve that issue. Any of DCYF's shortcomings with respect to other problems that were identified in the case plans are relevant only to the extent that those problems may have contributed to the respondent's inability to overcome her difficulties with substance abuse. *See In re Natalya C.*, 946 A.2d at 202–04. Here, the record does not give any indication that Shakiyyah was incapable of complying with or succeeding with substance-abuse treatment, even considering her other challenges.[14] As such, we cannot find any clear error in the trial justice's findings or conclusions of law.

### Conclusion

For the reasons stated above, we affirm the decree of the Family Court. The papers in this case will be returned to that tribunal.

---

13. The respondent indicated that she was willing to see Dr. Parsons and that she thought she may have done so in the past. Ms. Brown testified that Shakiyyah signed a release for Dr. Parsons, and that release was, in fact, forwarded to Dr. Parsons.

14. We nonetheless are concerned by the manner in which DCYF handled this case. Caseworkers, who had identified a host of problems which presented barriers to reunification, including serious cognitive deficiencies, did little to refer Shakiyyah to the services necessary to address several of those issues.